Duane A. Bishop, Sr. *vs.* Chauvin Spinning Company.

NOVEMBER 27, 1957.

Present: Condon, Roberts, Andrews and Paolino, JJ.

ROBERTS, J. This is an original petition for compensation under the workmen's compensation act, general laws 1938, chapter 300, as amended by public laws 1954, chap. 3297. It is before this court on the respondent's appeal from a decree of the workmen's compensation commission awarding the petitioner compensation and medical and hospital expenses. The injury for which the award was granted was found by the full commission to have been sustained on October 14, 1954 while the petitioner was employed by the respondent.

It appears from evidence which is not substantially disputed that on May 3, 1952 petitioner, while employed by the Centredale Textile Company, hereinafter called Centredale, sustained an injury to his back. On August 15, 1952 he underwent surgery during the course of which an extruded intervertebral disc was removed. Thereafter in December 1952 he returned to work for Centredale. At that time he was partially disabled and limited to the performance of light work. On May 5, 1953 while still in the employ of Centredale he again injured his lower back and was con-

sidered totally disabled until September 16, 1953. He returned to work for that employer in September 1953 but was still partially disabled and under instructions to perform only light work that did not require lifting or bending. He continued to work for Centredale and a successor employer until March 1954, at which time he was laid off for lack of work.

The petitioner thereafter entered the employ of Chauvin Spinning Company in July 1954. He informed respondent of his prior injuries, and it is not disputed that at that time he was wearing a canvas belt as a back support, used a bed board, and frequently took sedatives to ease the pain in his back. He was assigned to a night shift, his hours being from 11 p.m. to 7 a.m., and was given work tending certain carding machines in respondent's plant. The petitioner operated three of these machines. He was required to replace the spools as they became filled with yarn and to tie ends when there was a break in the yarn.

According to petitioner, just prior to October 14, 1954 the quality of the yarn was poor and it broke frequently, requiring him to bend over to pick up the broken threads and tie them. During the night of October 14 this condition was very bad and he was on his hands and knees all night tying broken strands of yarn. The pain in his back increased and about 4:30 a.m. it became so intense that he was unable to work any longer. His son, who was working with him, took him home, leaving a note for the employer as to what had happened.

On the following day, October 15, 1954, petitioner saw his doctor, Stanley D. Simon, who considered him to be totally disabled and directed him to stop work. Thereafter on June 13, 1955 the trial commissioner entered a decree in which he authorized Dr. Simon to perform an operation to accomplish a spinal fusion, which operation was subsequently done. The case was heard by the full commission together with other associated matters, and on January 17, 1956 the

commission entered the decree from which respondent has claimed an appeal to this court.

In that decree the commission found, among other things, that the injury of petitioner "arose out of and was sustained in the course of his employment, was connected therewith and was referable thereto" and that such injury was "an aggravation of a pre-existing back condition superimposed upon an operation for the removal of a herniated intervertebral disc at L5-S1." The commission made the further finding that "the unusual exertion and the repeated bending and twisting which petitioner was compelled to do on October 14, 1954 aggravated the petitioner's pre-existing condition to the point where he became incapacitated." In the decree respondent was ordered to pay petitioner compensation for total incapacity from October 14, 1954 and to pay certain specified medical and hospital expenses.

The respondent contends that petitioner did not suffer an aggravation of a pre-existing injury in "the legal use of the term." According to respondent, petitioner had his injury when he went to work on October 14 and nothing happened to him during said night other than that his injured back "gave out" because he was bending and stooping, which activities his doctor had directed him to avoid. The gist of its contention is that there has been no showing that petitioner was subjected to an application of external force in the course of his employment and therefore he could not have sustained an aggravation.

This court has never attempted to state in precise terms what constitutes an aggravation. We have consistently held that under the law, where a pre-existing injury is aggravated or lighted up by the application of external force, the injured employee is entitled to compensation for the incapacity that results therefrom. *Maresca* v. *Lumber Mutual Casualty Ins. Co.*, 82 R. I. 272, 275. In that case the aggravation resulted from an application of an external force. In *Bucci* v. *H. P. Hood & Sons, Inc.*, 75 R. I. 8, the

aggravation for which the petitioner received compensation resulted from overexertion. The statute then provided that an injury in order to be compensable must have resulted from an accident. But since that requirement was eliminated we have never held that it was necessary to show that the aggravation of an existing injury resulted from an application of external force, in order to establish that such aggravated injury was compensable.

In the present state of the law the statute does not require the showing of an accident. To entitle an employee to compensation for the incapacity flowing from an aggravation, it need only be shown that he was suffering from some condition or infirmity which was aggravated or lighted up as a result of his employment. See *Palmer* v. *Friendly Pharmacy, Inc.*, 84 R. I. 98, 121 A.2d 665.

In the instant case, to entitle petitioner to compensation for incapacity resulting from the aggravation, it is necessary only to show that the aggravation arose out of his employment. We held in *Di Libero* v. *Middlesex Construction Co.*, 63 R. I. 509, 517, that an injury arose out of the employment if "it was the result 'of a risk involved in the employment or incident to it or the conditions under which it is required to be performed.' " We do not perceive that any question can be raised here as to the aggravation being a result of the conditions under which petitioner was required to perform his work on the night of October 14, 1954.

In our judgment if the finding of the commission that petitioner suffered an aggravation of a pre-existing injury on October 14 is supported by competent evidence, such finding is conclusive and binding upon this court. We are of the opinion that there is competent evidence to support the finding of the commission. The petitioner testified that on the night of October 14 he was required to be on his hands and knees for several hours tying the broken strands of yarn. The attending physician testified concerning the cause of the disability which he observed on October 15 and

stated that it was the result of an aggravation of a pre-existing back condition which caused petitioner's partial disability to become total.

On the other hand respondent argues that if it be held that the commission did not err in finding that petitioner suffered an aggravation of a pre-existing injury arising out of his employment on October 14, it was error for them to require that respondent compensate petitioner for incapacity extending beyond the date of the operation for a spinal fusion and to pay the medical and hospital expenses incident to such operation. In *Maresca* v. *Lumber Mutual Casualty Ins. Co., supra,* we held that in aggravation cases an employee is entitled to compensation for that degree of incapacity which results from the aggravation. He is entitled to be compensated by his employer at the time of the aggravation for disability to the extent that it is caused by such aggravation and for medical and hospital expenses referable thereto.

The respondent contends that there is no competent evidence in the record to support the findings which relate to the medical and hospital expenses and to the disability extending beyond the time of the spinal fusion. However, it appears that respondent is arguing that in the record there is evidence from which it could reasonably be inferred that petitioner's disability after October 14, 1954 was a direct result of the laminectomy performed in 1952. That is not the question. The issue here is whether there is competent evidence to support a finding that petitioner's disability after October 14 resulted from the aggravation.

We are of the opinion that there is such evidence. The petitioner's attending physician, Dr. Simon, stated in one instance that "it was the accident of October 14 which necessitated the spinal fusion." With respect to the causation, the doctor testified that during the period which followed the laminectomy petitioner worked on two or three different jobs; that after October 14 and the aggravation

suffered thereon he has been unable to work; that he did not recover from such aggravation even after prolonged conservative therapy; and that he was ultimately required to submit to the fusion operation.

It is sufficient to say that the record contains substantial evidence which supports the finding of the full commission that the petitioner's disability following October 14 and the necessity for a spinal fusion operation were caused by the aggravation, and that the commission properly ruled that the respondent is responsible for the petitioner's disability, even that extending beyond the date of the spinal fusion operation, and for medical and hospital expenses.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Michaelson & Stanzler, Milton Stanzler,* for petitioner.

*Francis V. Reynolds, Richard P. McMahon,* for respondent.