Francisco P. BRANCO

v.

L & M CONCRETE FORMS, INC.

No. 84–392–Appeal.

Supreme Court of Rhode Island.

June 25, 1986.

---

David Oliveira, Providence, for petitioner.

Raul L. Lovett, Lovett, Schefrin & Gallogly, Ltd., Providence, for respondent.

## OPINION

KELLEHER, Justice.

This is a workers' compensation dispute in which we are reminded of the importance in workers' compensation disputes of the question of whether the employee's injury can be classified as a recurrence of a prior injury or an aggravation of that injury. Here the employer contends that the employee's petition for compensation benefits should have been denied because the employee's injury had been classified as an aggravation rather than a recurrence. At the trial level in the Workers' Compensation Commission, a commissioner ruled otherwise; and subsequently the appellate commission entered a decree affirming the trial commissioner's actions. The employer appeals. Hereafter we shall refer to the employee as Branco and to the employer as L & M.

Branco worked for L & M as a laborer. He sought benefits for an injury that he received on June 30, 1978, when a wooden form fell on his back while he was working for L & M. The form is used in creating the concrete foundation for a house. Some-

time in August 1978 the litigants entered into a nonprejudicial agreement awarding Branco various benefits. Once his incapacity ended, he returned to work for L & M. However, he was laid off in mid-January 1979. Two months later, in mid-March 1979, he began working as as laborer for a nursery located in the town of Barrington. He subsequently left the nursery, complaining of back problems. At that time there was pending before the commission a petition in which Branco was seeking further benefits from L & M because of his 1978 injury.

At the hearing before the trial commissioner, Branco's treating physician, an orthopedist, testified. He expressed the opinion that his patient's back problem was a "recurrence" of the injury he sustained in June 1978 when he was working for L & M. In turn L & M presented an orthopedist who had not examined Branco but, in response to a hypothetical question, expressed the opinion that Branco's endeavors at the nursery, which included the lifting of forty-pound shrubs, were responsible for his present back pain. The orthopedist classified Branco's complaints as an "aggravation."

Recently, in *Aguiar v. Control Power Industries, Inc.*, 496 A.2d 147, 149 (R.I. 1985), we noted that in determining the liability of successive insurers or employers when an employee is incapacitated by an injury, the first employer or insurer remains liable for the employee's continued disability absent a second separate intervening cause of disability, that is, an aggravation of the previous injury. Thus it was that when Branco's claim was considered at the Workers' Compensation Commission, he maintained that his 1978 pain was a recurrence of the original injury. On the other hand, L & M quite understandably took the position that Branco's labors at the nursery amounted to an aggravation—a new injury that would be the responsibility of the nursery or its insurance carrier.

Here the record presents conflicting views about whether Branco's 1979 pain and incapacity should be classified as a recurrence or an aggravation. L & M's insurer presented motion pictures in which Branco is the featured player. The pictures, a portion of which was exhibited to us at oral argument, show him working at the nursery. Branco concedes that he worked at the nursery but described his duties as very light when compared to his labors with the foundation forms. Again, one orthopedist's opinion was based upon his care and treatment of the worker. The other expert's opinion was based upon records made available to him by L & M's attorney and a hypothetical question that covered six pages of the transcript. Evidence presented by L & M's counsel also indicated that when the weather turned cold in the winter of 1979 and the construction season came to an end, Branco applied for and received unemployment-compensation benefits.

The issues presented in this controversy resolve themselves into questions of fact and credibility. Which expert is to be believed? What is the impact of the insurer's movies? Is Branco's testimony credible in light of his receipt of unemployment-compensation benefits?

Here the trial commissioner chose to believe the testimony presented by the treating physician, emphasizing that at no time did Branco complain to his physician about any new injury while he was working at the nursery. The trial commissioner was of the belief that the movies in fact indicated that Branco, while working at the nursery, was suffering from the residuals of the injury he received at L & M. The commissioner also emphasized that even though the receipt of compensation benefits indicated a willingness and an ability on the part of the recipient to work, it was obvious to the commissioner that Branco was actually incapacitated during this period. In the commissioner's eyes, the question of any fraud that might have been involved in the receipt of the benefits was an issue to be resolved in some forum other than the Workers' Compensation Commission. The appellate commission affirmed all of the trial commissioner's findings and conclusions.

The employer might well have prevailed on the evidence before the commission, but it did not. Our role in situations such as that presently before us is, as we have said again and again, extremely limited. If there is any legally competent evidence to support the commission's factual findings, this court must affirm such findings. *Carter v. ITT Royal Electric Division*, 503 A.2d 122, 124 (R.I. 1986). There is such evidence, and our remand is this:

The employer's appeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Workers' Compensation Commission.